**United States District Court**
**Eastern District of Michigan**
**Southern Division**

| | |
|---|---|
| United States of America, | Criminal No. 21-CR-20686 |
| Plaintiff, | Honorable Judith E. Levy |
| v. | |
| D-1 Savinder Singh, | |
| Defendant. | |

**Government's Sentencing Memorandum**

I.   **Introduction**

On November 2, 2021, Savinder Singh attempted to drive his semi-truck through an international border crossing. Customs and Border Protection Officers pursued Singh on foot and in vehicles as Singh crossed the Ambassador Bridge, traveling from the United States to Canada. Singh had reason to evade inspection - hidden within his trailer was an incredible amount of cocaine. The officers found all 142.45 Kilograms (313 Pounds) of it.

1



**(Figure 1 - 142.45 Kilograms of Cocaine)**

Singh pled guilty pursuant to a plea agreement. In it, the Government recommended, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), to request a sentence not to exceed the bottom of the guideline range, as determined by the Court. A Presentence Investigation Report ("PSR") was prepared. There are

no unresolved objections. The government requests this Court accept the plea agreement and impose a sentence consistent with its terms.

## II. Facts

Savinder Singh came from India to Canada for work, and eventually became a Canadian citizen. As an international truck driver, he'd crossed between the United States and Canada dozens of times. Knowing full well that when crossing internationally with commercial cargo he was subject to inspection, he attempted to evade inspection, and ignored the commands of Customs and Border Protection Officers.

When officers finally caught up with Singh, he refused to follow their basic instructions and made obvious and verifiably false statements about the reasons for his travel. For example, when questioned why he traveled three hours out of his way (to a different state), his response was "he like the specific Love's location . . . and get's a sandwich from the Arby's." *PSR* at ¶ 16.

When cargo is transported internationally, the container is sealed. This seal protects the integrity of whatever is contained within the trailer or shipping container. Here, the seal on the container didn't match the information on the bill of lading. A clear indication that that the cargo had been tampered with.

Relying on their training and observing the suspicious behavior, officers searched the trailer of his semi-truck and found approximately 140 kilograms of

3

cocaine, packaged for distribution, and hidden behind legitimate contraband. *PSR* at ¶ 15.

## III. Advisory Sentencing Guidelines

Although the sentencing guidelines are advisory, the Court must nonetheless begin its sentencing analysis by properly calculating the applicable range defendant faces. *See United States v. Booker*, 543 U.S. 220, 245 (2005). The advisory Guidelines remain an important factor in sentencing. "[I]t is fair to assume that the Guidelines . . . reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *United States v. Rita*, 551 U.S. 338, 345 (2007).

## IV. The Safety Valve

It is the position of the Government that Singh qualifies for the safety valve, and as a result, can be sentenced without regard to any statutory mandatory minimum.

## V. Sentencing Factors

Congress has provided, through 18 U.S.C. § 3553(a), the relevant objectives and factors to be considered by sentencing courts in imposing a "sentence sufficient, but not greater than necessary."

Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to

reflect the basic aims of sentencing (including retribution, deterrence, incapacitation, and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution. The most relevant factors are evaluated below.

1. **Nature and circumstances of the offense, and the history and characteristics of the offender, 18 U.S.C. § 3553(a)(1)**

What is the impact of 140 kilograms of cocaine? Drug dealers sell by the gram. A gram (or in the case of pure and uncut cocaine, a fraction of a gram) would constitute a user quantity dose. So, Singh had at least 140,000 user quantity doses of cocaine in his semi-truck. For comparison's sake, that would be enough cocaine to get every resident of Ann Arbor (population 113,034) or Lansing (114,297) high, per the 2010 Census. A conservative estimate of the street value of the drugs seized from Singh easily exceeds 6 million dollars.

CDC Data highlights the seriousness of Cocaine and the damaging and deadly effects on the population at large. The most recent complete data (from

2019) details how Cocaine is involved in 1 in every 5 overdose deaths. This year, overdose deaths were projected to exceed 100,000 people nationwide.[1]

Obviously, criminals who willingly transport millions of dollars in drugs assume risks and dangers associated with that trade. However, the surreptitious nature of the international drug trade, particularly involving such significant quantities of drugs, also poses a danger to the community. Border security personnel from the United States and Canada, working to promote trade and travel, are unaware of the incredible street value of the contraband. Everyone physically near 140 kilograms of cocaine is at risk.

Finally, this Court should consider Singh's history and characteristics when fashioning its sentence. What makes this offense different is that it clearly was *not* a crime of economic necessity, as is so often the case with people who act as couriers in drug trafficking organizations. Here, Singh has over $1,000,000.00 Dollars in assets, including a large home, Rage Rover, and BMW M4 Sports Car. This was a crime of opportunity, not necessity.

---

[1] "Death Rate Maps & Graphs: Drug Overdose Deaths Remain High." https://www.cdc.gov/drugoverdose/deaths/index.html. Last Visited: October 19, 2022.

## 2. Seriousness of the offense, promoting respect for law, and providing just punishment, 18 USC § 3553(a)(2)(A)

The seriousness of offenses that abuse the United States / Canada trade relationship cannot be understated. International drug trafficking abuses the free and open trade between the United States and Canada. This trade has significant benefits to the economies of the United States and Canada; most notably here in Michigan. A small sampling of the historic economic benefits and co-dependence underscores the significance of the relationship as trading partners:

- U.S. trade with Canada averages $1.5 billion per day, more than U.S. trade with the entire European Union.

- More than 200 million people and approximately $500 billion in goods move across the Canada/U.S. border annually.

- In 2007, 20% of all U.S. exports were to Canada.

- In 2008, 75% of Canadian exports were to the U.S., representing nearly 33% of its Gross Domestic Product.

- In 2007, Canada was Michigan's most important trading partner, purchasing 58% of the state's foreign bound goods.

- In 2008, total trade between Michigan and Canada exceeded $67.4 billion. Canada trades more with Michigan than with any other U.S. state.

- In 2008, Michigan residents and Canadians crossed the border almost 2.8 million times.[2]

---

[2]"Economic Impact of the Border: Detroit/Windsor." Available at https://www.nrc.gov/docs/ML1126/ML112630478.pdf. Southeast Michigan Council of Governments. Published Fall 2009, last visited October 5, 2022.

Put plainly, the free and open exchange of goods and services provides significant economic benefits to both the United States and Canada. Singh took advantage of this relationship to export kilograms of drugs; this, in turn, harms both communities. The sentence imposed by this court should reflect that criminal actions like this only hinder this relationship.

### 3. Adequate deterrence and protecting the public from further crimes of the defendant, §3553(a)(2)(B) and (C)

This factor includes two components—specific deterrence and general deterrence. Specific deterrence looks to dissuade an individual defendant from committing future crimes, while general deterrence aims to have the same effect on "the population at large." *United States v. Camiscione*, 591 F.3d 823, 834 (6th Cir. 2010).

A significant sentence of incarceration supports specific deterrence. Singh will no longer be able to legitimately transport goods between the U.S. and Canada. Once deported, Singh cannot return to the United States legally (without permission).

In this case, a sentence near the guideline range is particularly relevant to general deterrence, thereby dissuading the population at large for attempting similar criminal endeavors. Guidelines stand for a very basic premise - Courts should strive to treat similarly situated people the same. Someone arrested with 140 kilograms of cocaine should face a similar punishment range (while

considering other factors) regardless of where along the border between the United States they enter, where they receive the drugs, or where they plan to exit.

A significant sentence sends a clear and unambiguous message to those who would traffic drugs for money across an international border, who in the process harm communities throughout the United States and Canada.  The consequences will be severe.

## VI.   Conclusion

The government recommends that the Court impose a sentence not to exceed the bottom of the guideline range, as determined by the Court.

Dawn N. Ison
United States Attorney

*/s/ Robert Jerome White*
ROBERT JEROME WHITE
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226-3211
(313) 226-9620
Robert.White@usdoj.gov

Dated:   November 18, 2022

## Certificate of Service

I hereby certify that on November 18, 2022, I electronically filed the foregoing document with the Clerk of the Court, which will provide electronic service the attorneys of record, Brian Legghio and Layne Sakwa.

>*/s/ Robert Jerome White*
>ROBERT JEROME WHITE
>Assistant United States Attorney
>211 West Fort Street, Suite 2001
>Detroit, Michigan 48226-3211
>(313) 226-9620
>Robert.White@usdoj.gov